Appeal of **DALTON GYMNASIUM AND**          **Docket No. 194.**
**SWIMMING SCHOOL, INC.**

The income of a corporate taxpayer is derived principally from charges for individual instruction in swimming. The taxpayer was a "personal service corporation" for the year 1919 as that term is defined in Section 200 of the Revenue Act of 1918.

Submitted October 31, 1924; decided November 10, 1924.

*Henry M. J. Mannix, Esq.*, for the taxpayer.

*J. A. Adams, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before GRAUPNER, LANSDON, LITTLETON, and SMITH.

From the evidence of record and from testimony orally given before it, the Board makes the following

### FINDINGS OF FACT.

1. The Dalton Gymnasium and Swimming School, Inc., New York, N. Y., was incorporated under the laws of the State of New York in the year 1913 with a paid-up capital stock of $10,000, which was the amount of the paid-up capital stock during the year 1919, and which was owned as follows:

By Frank E. Dalton_____ $7,500
By Louis C. Dalton_____ 2,500

2. The taxpayer filed an income-tax return as a personal service corporation for the calendar year 1919.

3. The Commissioner disallowed the claim of the taxpayer to a personal service corporation classification, found that its net income for the calendar year 1919 was $5,585.72, and mailed a deficiency letter to it proposing the assessment of an income and profits tax upon said income of $908.

4. An appeal from the finding of the Commissioner was filed with this Board on September 17, 1924.

5. During the year 1919, the taxpayer operated two swimming pools in New York City, one at 308 West Fifty-ninth Street, and one at 19 West Forty-fourth Street. The gross income from all sources in 1919 was $41,044.25, of which amount approximately 90 per cent was from charges for lessons in swimming. The taxpayer received $4,169.40 from the sale of bathing suits and accessories, of which about 25 per cent represented profit. The taxpayer also received about $450 from the sale of a book written by Frank E. Dalton upon the teaching of swimming.

6. The two stockholders have a wide reputation as teachers of the art of swimming. Mr. Frank E. Dalton has conducted a swimming school in New York City since 1898, and Mr. Louis C. Dalton has been associated with him as instructor in swimming since 1909. Each has written numerous articles on the art of swimming and has also given radio talks upon the subject.

7. The swimming lessons given by the taxpayer are based upon "The Dalton Method of Instruction". This is a method of teaching swimming which is employed solely by the Daltons and which was originated and developed by Frank E. Dalton. Each pupil is individually taught. Two courses of instruction are given, one consisting of ten lessons for which a charge of $25 is made, and one of twenty-five lessons for which a charge of $50 is made. If the instruction is to be given by either one of the Daltons the rates of tuition are doubled. There is such a demand for instruction by the Daltons that their time is fully occupied. During the months of January, February, March, and April, 1919, two instructors were employed during the daytime and one in the evening; during the month of May three instructors were employed during the daytime and two in the evening; during the months of June, July, and August five instructors were employed during the daytime and five in the evening, and during the remaining months two instructors were employed. Where swimming lessons were given by paid instructors and wherever a pupil was not making satisfactory progress under the instructor, one of the Daltons took personal charge of the case. In addition to such supervision the tenth or twenty-fifth lesson given in any course was specially given by one of the Daltons. During the summer season the two Daltons gave about 60 lessons a day out of the total number of from 100 to 140 lessons given. During the remainder of the year a much larger proportion of the total number of lessons was given by the Daltons. About 60 per cent of the fees received for instruction were for instruction personally given by them.

·8. The two stockholders devoted their entire time and attention to the affairs of the taxpayer and had no other business. During 1919 each was in a swimming suit giving instruction in swimming about 10 hours per day.

9. The salaries paid instructors during the year 1919 amounted to $4,681.84. The salaries paid to the two Daltons aggregated $8,159.05. The net income of the corporation, after the payment of salaries to instructors and to the Daltons, amounted to $5,885.72, which was distributed to the stockholders according to the stockholdings— 75 per cent to Frank E. Dalton and 25 per cent to Louis C. Dalton.

10. Balance sheets at the close of 1918 and 1919 were as follows:

|  | Dec. 31, 1918 | Dec. 31, 1919 |
|---|---|---|
| Assets: | | |
| Cash | $403. 59 | $4, 178. 99 |
| United States Governmental securities | | 451. 28 |
| Plant and equipment | 13, 647. 63 | 15, 706. 65 |
| Total | 14, 051. 22 | 20, 336. 92 |
| Liabilities: | | |
| Capital stock | 10, 000. 00 | 10, 000. 00 |
| F. E. Dalton, loan | 3, 550. 00 | 3, 450. 00 |
| Reserve for depreciation | 500. 00 | 1, 000. 00 |
| Surplus | 1. 22 | 5, 8`6. 92 |
| Total | 14, 051. 22 | 20, 336. 92 |

The plant and equipment account consisted principally of water filters, carpets, safe, and office equipment, and articles necessary for the conduct of two swimming pools on leased premises.

### DECISION.

It is held that the taxpayer was a personal service corporation as that term is defined in section 200 of the Revenue Act of 1918 for the year 1919. The deficiency found by the Commissioner is disallowed.

### OPINION.

SMITH: Section 200 of the Revenue Act of 1918 defines the term *personal service corporation* as follows:

The term "personal service corporation" means a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor; but does not include any foreign corporation, nor any corporation 50 per centum or more of whose gross income consists either (1) of gains, profits, or income derived from trading as a principal, or (2) of gains, profits, commissions, or other income, derived from a Government contract or contracts made between April 6, 1917, and November 11, 1918, both dates inclusive.

Inasmuch as the taxpayer is not a foreign corporation, nor one in which as much as 50 per cent of its gross income consisted of trading as a principal, and did not derive income from a Government contract, it is necessary to consider, so far as the year 1919 is concerned, only—

(1) Whether it was a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders;

(2) Whether such owners or stockholders were themselves regularly engaged in the active conduct of the affairs of the corporation; and

(3) Whether it was one in which capital, whether invested or borrowed, was a material income-producing factor.

From the findings of fact it appears that 60 per cent of the total gross income of the corporation was received as charges for instruction personally given by two stockholders and that those stockholders supervised and participated in the instruction from which an additional 30 per cent of the total gross income of the corporation was derived. It further appears that the two principal stockholders were actively engaged in the conduct of the affairs of the corporation and had no other business. It also appears that the swimming pools operated by the taxpayer were operated under lease; and that the investment of the taxpayer was only in equipment necessary for the operation of two swimming pools.

The Board is clearly of the opinion that this corporation meets all the essential requirements of a personal service corporation. The evidence shows that 60 per cent of the total gross income is ascribable directly to personal services performed by the two stockholders and that practically all of the income is to be ascribed either directly or indirectly to their efforts. The stockholders were engaged in the active conduct of the affairs of the corporation. The capital employed was not large. The taxpayer did not own the buildings in which its business was carried on. In the opinion of the Board capital can not be regarded as a material income-producing factor.